Good morning. May it please the court, Victor Chavez, assistant federal defender on behalf of the appellant Michael Hollis. In this case, it is our contention that the district court's sentencing decision was brief with procedural error, beginning with the miscalculation of the applicable sentencing guidelines. And, of course, I'm referring to the imposition of the two-level enhancement for vulnerable victims. Why is it a procedural error? Well, Your Honor, because under the Ninth Circuit's Cardi decision, the court must first correctly calculate the applicable sentencing guidelines. And if they are calculated incorrectly, the court has said that that is procedural error. Let me ask, why didn't the defendant raise the issue in the first appeal, insofar as the imposition of the vulnerable victim enhancement? Well, Your Honor, of course, it was raised in the district court. It was not pursued at the opening brief. It was just, I guess I would say it was a tactical decision. Wouldn't that qualify as a waiver of the issue? Well, Your Honor, I don't believe so, in that the case was remanded to the district court, and the court resentenced and entertained the argument. But normally, if a matter comes up to this court on one issue, when there could have been another issue raised, and the matter is remanded back to the district court, and district court does more or less the same thing, and the issue comes back here, don't – doesn't this court normally hold that that is a waiver if you I believe that that has occurred, Your Honor. I would say that the argument – the argument that was raised at – is the same enhancement that was attacked. I would say that I think the argument was a little bit different, and that the argument raised on appeal is a different argument than would have been raised if it had been raised the first time around. In any event, with regard to the vulnerable victim enhancement, it's our position that the enhancement, by its terms, that is, by the language of the guideline and by the application notes, does not apply to Mr. Hollis. What's our standard of review? The standard of review is de novo for application of the guideline. For the vulnerable victim enhancement. Well, it would be de novo as to the application. It would be clear error as to factual findings, and it would be abusive discretion as to application of the facts to the guidelines. So are you challenging all three of those aspects of the determination or one or more? Well, I guess all three, Your Honor. I am saying that, first, with regard to factual – well, first, I am saying that the guideline doesn't apply, and that's a legal argument. Secondly, as to the factual basis upon which the district court applied that guideline, which was basically to say we don't know, there's no evidence as to whether these downloads were pinpoint or were bulk downloads, no evidence as to whether the defendant was present when this occurred, no evidence as to what, in fact, there was no evidence even as to whether – Stop you. Yes. But he's pled to the possession of the items. And so, therefore, doesn't – isn't it up to the defendant to raise those points at that stage? He's pled to them. Well – And there's no dispute that the items in his possession contained materials which would fall within the vulnerable victim enhancement as determined in cases such as Lynn. Well, Your Honor, he has pled to – he pled to receipt or distribution. He didn't – this case involves literally several thousand, thousands of images. He did not plead to any specific image or type of image. And it is the government's burden to prove up the enhancement. Well, they did. They did. They showed that he had the possession of more than one image of victims who are young – as young as 2 years old, 4 years old, 5 years old. They showed that there were some of those images within his computer. They did not show very significantly, I think, that he had knowledge of those images. Is it actual or is it also should have known? They didn't show either one. There was no evidence as to whether – no evidence as to knowledge. And that is – that is one of the key concerns, because that's an element to establishing this enhancement. In the district court – did the district court professionally consider that although they were interspersed, a lot of them had tags on them, names that – file names that would have revealed their content? The district court – I don't think that's clear, Your Honor. And there was no expert forensic evidence presented as to whether, for example, tags or names are usually accurate or not accurate. But the district court made that finding, that there were tags on some of the files that clearly indicated they were, you know, young, 4-year-old, engaging in explicit sexual activities with an adult. I mean, so if the district court made that finding, why is that clear error? Well, because there – it wasn't supported by evidence in the record. It's like the first time when the district court made the finding that a five-level enhancement applied for a specific type of distribution, the district court basically was relying on knowledge from other cases and expert testimony in other cases. There was none in this case. But that wasn't the reason why he was reversed, though. Well, it was. It was because there was – because the record did not support his conclusion. Well, no. It was because of the fact that his conclusion that getting downloads quicker, et cetera, et cetera, was a gain, which – that was the basis upon the reversal first time around. Correct. There wasn't – the record did not factually support that conclusion, and that was the basis for the five-level distribution enhancement. No. It wasn't that the record didn't support that conclusion. As a matter of law, it was determined that was not sufficient gain to support the enhancement. I think the decision – Even if it was quicker, that wouldn't be enough to constitute gain under the enhancement.  With all due respect, I think the decision is pretty clear that the court found that the record did not contain sufficient evidence. Of gain. That's what the case said, that there wasn't sufficient evidence of gain. The mere fact that the system allowed the files to be downloaded faster was not sufficient gain to support the enhancement for monetary – for gain. I thought that the court was finding that that fact was not even established. Your Honors, the other crucial point is that – Why don't we just focus on what our colleague said? Yes. It said, and then I'll – you can provide the interpretation why you think it supports what you say. It says, Because there was no evidence in the record to support its finding that he shared files in order to obtain any benefit. We agree that the record fails to establish that Hollis distributed pornographic material in order to obtain faster access to other pornographic images or any other benefit. I'm sorry, Your Honor. I – that's exactly what the court of appeals found, and I – That's why I hope so, because that's what I'm reading. Yeah. It is the Mendispo. And I understand that to say that the record did not contain evidence that Mr. Hollis was trying to obtain an electronic benefit, as the court put it, meaning greater speed and delivery of downloads, what have you. Okay. All right. Well, we'll have to look at that. And, Your Honor, I believe my – Counsel, before you leave, what about your argument that the district court judge did not comply with the Band-Aid? Could you briefly address that? Yes, Your Honor. The court clearly indicated that it was not going to apply the five-level distribution enhancement. And, of course, Mr. Hollis conceded the two-level. The court then said – I'm not applying that enhancement, but then it said repeatedly, you know, I was right the first time. It wasn't pleased with our – the court was not pleased with our colleagues. That was obvious. Yes. From the statements that were made. And then the court – but the court said, but I can't apply the five levels. So then the court announced, and surprisingly, that it was going to impose that the last sentence of a 15-year net sentence was the right sentence for Mr. Hollis, and that's what the court was going to do. And the court then corrected its math, and rather than imposing 210 months, imposed 15 – 200 months, but was very clear that the intent was to impose the same sentence as last time. But it didn't actually impose the same sentence. Not mathematically, but it simply made a mathematical correction. And what I am saying is that that decision is internally inconsistent, and that if the court – if the case now was at least three levels less egregious based on the guidelines, and that was not reflected in any way in the sentence, and that is why I say that the court simply did what it did the first time, and it made it very clear that it believed that it was correct. Well, it believed it was correct that the amount of time, but I think the court was pretty clear that it was honoring the mandate from the court of appeal. Well, that will be for this Court to determine. Okay. Thank you. Thank you. Good morning, Your Honors. David Gappa for the United States, Assistant United States Attorney, Fresno, California. There are two issues that the defendant has raised in this appeal, both framed in procedural error. The government believes that there was no procedural error by the district court in sentencing this defendant, that the district court in this case did everything that it was legally required to do under Supreme Court precedent and the precedent of this Court, and that it properly calculated the sentencing guideline range, applied the two-level enhancement for the vulnerable victims, and then determined what the reasonable sentence would be, and in doing that, applied what relevant law controls that decision, and stated that the sentencing guidelines are advisory, that they're just one factor to consider among others, that the court needed to look at all of the 3553 factors and fashioning what was in the overall the most reasonable sentence, and then proceeded to entertain the arguments. It obviously read the sentencing memoranda and heard from the defendant and went through all of his arguments and stated why the net sentence of 15 years was the most reasonable. Were you the attorney who tried this case in district court? Yes. And were you the attorney who was present when the judge was complaining about the Ninth Circuit's ruling? Yes. You were cheerleading him pretty hard there. Well, that's not a nice question. That's okay. They could have taken this as a comeback. You're lucky. Well, I think that the district court got the decision correct in the first instance. And when reviewing the transcript from that in preparation for this appeal, what I did notice is that the government at some point in that initial sentencing hearing said we're presenting evidence on the distribution element, and to the extent that the court is not satisfied that we've produced enough evidence to justify the five-level enhancement, we would like an opportunity to present that. So when the case came back on remand, the government's question was what is the scope of the remand? And that started the judge into the statements that it's a limited remand that he was going to appeal. He was right all along. He's still right. And you're agreeing. Yeah, you're right. The Ninth Circuit got it wrong. But we have to live with what they did, even though it's wrong. So how do you think that affected the court's determination of the sentence on remand? I don't think it did, because I think he was more than fair to this defendant, because he said clearly and repeatedly, I'm not going to apply that five-level enhancement. It's as simple as that. But I still think the sentence I gave was right. Isn't he taken away with one hand when he gives with the other hand? No. Because the guideline range, purely the guideline range, the first time around was 324 to 405 months. It was capped at the statutory maximum of 240 months. So the guideline range was 240 months. And the judge said, under my requirement to look at the 3553 factors, this is what I think is the most reasonable sentence. Now, whatever you make of that first decision from this Court, it doesn't change the facts. And I think the judge is looking at the facts. And he's then got a guideline calculation which he, even the defendant concedes is correctly applied, except for the two-level enhancement for vulnerable victims. But the Court's view was that 235 to 240 was the range. So it's not that different the second time around. It's a five-month difference in the range at the low end. And, in fact, when the judge applied the 3553 factors the second time, the sentence came out to 200 months even. What was the range the first time? 324 to 405 months. And that is if you added the five levels for the distribution for thing of value. So it was capped at 240 months. So was it capped at 240 both times or? Correct. So the second time the range was 235 months at the low end to 240. And the judge went through all of the reasons and then noted that the congressional statements that have evolved through this legislative action in this area have made it very clear and acknowledged in anticipation of the Court's request that we address the Henderson case, the Court did, in our view, not forecast that panel's decision months down the road, but he did state clearly that the guidelines are punitive and there's cause for that. So it's the government's view that to the extent that Henderson has any bearing on this, Henderson didn't change the dynamic or the law for sentencing because it still reiterates that what the Court has to do is correctly calculate the guideline range and then look at all of the 3553A factors. And then only when squarely presented with an argument that the Court should disagree on policy grounds with the guidelines does the Court have to explicitly address that. That was not explicitly raised in this case. But even assuming that that requirement were there, the government would argue that there was enough by this district court to indicate two times that his view was the guidelines are sufficiently and adequately punitive. But they're just one factor to consider. And both times he departed from the guidelines and gave a sentence less than the low end of the guideline range. What's your response to opposing counsel's argument that rationally the sentence imposed should be three levels lower than was actually imposed if one considers that the Court was not allowed to include the five-level enhancement that was previously included, but instead imposed a two-level enhancement? What's your response? My response is that's a curious argument from a defense attorney who usually would argue that the guidelines should be given little weight. In other words, we shouldn't mechanically pull out the guideline manual and do a calculation and then do a formula to decide what the sentence is. But I think that the defendants generally say you need to look at what the 3553A factors were. That's what repeatedly the theme was from the first sentencing to the second sentencing. And that's what this district court did. So it would not be appropriate for the district court to simply say last time I gave a four-level departure and this time I'm giving a four-level departure, and then simply do a math equation and say that's, therefore, the most reasonable sentence. I don't think that we'd want any court to do that. I would be surprised if, generally speaking, that's what a defendant would want a court to do. I think what we all want a court to do is to apply the law, and the law says that you need to look at all of the factors, the sentencing guidelines being just one of them. And once you have that range, it's one thing to consider as well as the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, need for deterrence. I think we know what those are. Can I, before your time runs out, on the vulnerable victim enhancement, the government has the burden of proof to show that it applies, correct? Yes. Okay. And it requires showing, and you have to prove, that he knew or had reason to know that the victims had unusual vulnerability. Correct. You seem to argue otherwise, that it's somehow presumed when it's child pornography. Well, we haven't made that argument, so to the extent that's implied, it's not. And what the – I think that Judge Wu raises a good point. I think this argument was not made the first appeal, but it, on remand, was re-presented to the district court, and it's now before this Court. Notably also, though, after the defendant's opening brief was filed, this Court issued the Lynn decision and squarely, in the government's view, decided the issue in this appeal. Because in the Lynn case, the defendant argued that there was a need for a causal or a nexus connection between the defendant's offense conduct and the vulnerability to the defendants, and the Court in Lynn squarely rejected that. And we believe that Lynn controls for that reason. And in Lynn – But that doesn't answer the question as to what evidence was there in the record that this defendant knew or should have known of the existence of vulnerable victims. Well, in essence – Answer to that question. There was sufficient evidence. We had a representative sample of 20 videos and numerous still images, some of which were actually shown to the Court but all made available, which, you know, all of which were depicting vulnerable victims. And when you looked at the file titles and you saw that they represented the content, and then you go through the steps that somebody needs to take to acquire those through the LimeWire program, that you put in a search term, and then you get a list of files that you could download. And when the files come up, would those titles appear? Yes. And those file titles remain on the computer, and you see those when you view them or whether you don't view them, those titles are there, and they are indicative of the content. And that's established in this record how? Through – What is said? Through the attachments that were initially submitted in the sentencing memorandum and then the – essentially the proffer made by the government. And there are also screen captures of the LimeWire program, which talks about when you want to find material, put in your search term. Well, that's instruction manual. But what's the evidence that this defendant, using that program, would get the titles that the Court relied upon to impute knowledge? That was – the government walked the Court through the steps that somebody takes when going through the LimeWire program, and that you put in a search term, get a list of candidates for download, and then you have to affirmatively click on those titles to complete the download process. But was there evidence in this particular case that these images were captured from his computer? Yes. But finally, I would point the Court to the statement in Lynn, and it says that Lynn concedes that toddlers and children portrayed in the videos were victims of his offense conduct and that their age and size made them vulnerable and particularly susceptible to exploitation. Under the plain meaning of 3A1.1, no more is required. But he conceded it. It's not conceded in this case. It is to the extent that – And that doesn't – it's begging the question anyway. The question is, in Lynn, did he know that they were there? That's the question here. Did he know? Yes, he had an array of photos, which everybody agrees did not all contain child – Wasn't there a separate file, Mike's file, that contained some of those videos showing underage children – I mean, really young children? It was – one of them was separated and placed in a separate file called Mike's file or folder, right? I'm not sure of that. But to answer your question of – in Lynn, the defendant actually went to trial and denied any knowledge at all of the offense. So I would say that there's at least as much evidence in this record. Lynn – you know, the quote – I know the quote from Lynn. That's why I was asking you the question before, to know that if you have 4-year-olds engaged in sexual activity with an adult, that they're vulnerable. Yes, but there's still the antecedent question is, does the person know that embedded within the array that he downloaded, there are those? You know, he clicks on a generic title and winds up unbeknownst. And we've had cases like that. Correct. So that's what I want to make clear – or get clear with the government's position is, are you going to read Lynn as saying, so long as there are a category of photos on a person's computer that, as a categorical matter, per Lynn, would be sufficient to show vulnerability for the enhancement? It doesn't – the government doesn't have to prove that the defendant actually knew that he had those on his computer. No. We would say that the guideline on its plain language says that knew or should have known. It does say that. So the should have known allows for a lower standard or showing, but that we've met it in this case by demonstrating the steps that somebody has to go through to acquire through LimeWire those images. Okay. I'll give you a minute for rebuttal. If I may address the Henderson case, I think that, first of all, in this case, some of the types of materials referred to in Henderson – for example, the Stabenow article were provided to the court. There was mention – there was nothing called a Kimbrough argument, but the problem of the guidelines was mentioned both in writing and orally at sentencing as well. It is true that the bulk – the focus of the argument was based on United States v. Cardi saying apply 3553A, individualize the sentence. But I do think that it is clear from the record that the court did not – was not aware or did not understand its discretion to depart based on policy grounds, number one. And to the extent that the defense made such an argument, I think it is true that the court did not address it in any way. And under the Henderson decision, each of those would be procedural errors. So I think that that does exist in this case. Finally, with regard – one very important point, what distinguishes Lynn from this case is that in the Lynn case, Mr. Lynn made several concessions, as I think the court has noted. But secondly, Mr. Lynn did not argue that the vulnerable victim guideline had to be based on his – on the defendant's criminal conduct and on the defendant's relevant conduct. And in fact, what occurred in that case, as it did in the Holt case, is that the defendant who was, let's say, receiving or distributing, was held to account for the initial abuser's conduct in sexually abusing the minor. And that's a distinction in the argument that we make. We say that whether the child being abused was 2 years old or 12 years old would not be relevant to the defendant's possession or receipt of those images. So I think that's a critical distinction. Okay. Thank you. Thank you. I appreciate the argument, counsel. It was well-argued and it's helpful to the Court. All right. The case is submitted.
judges: Wu, Fisher, Rawlinson